IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

AT MAY TERM, 1834.

---

### OVERSEERS OF THE POOR OF ORANGE vs. OVERSEERS OF THE POOR OF SPRINGFIELD.

If the master discharges the apprentice, without making any assignment of him, or without turning him over; but suffers him to go at large, without claiming any benefit from his services, the apprentice will acquire no settlement by living with another person in another parish.

A service for the term required by the statute, with a second master, will give a settlement, if such service was under the indenture; and to constitute a service under the indenture, there must be an assignment express or implied.

If all relation between the first master and apprentice, (so far at least, as the same can be dissolved by the master) has ceased; then, in order to raise an implied assignment, and to constitute a service under the indenture, there must be an actual *turn over* of the apprentice, or an explicit consent or agreement by the master to the particular subsequent service.

---

The paupers, being the widow and four children of Elias L. Terril, deceased, were sent by an order of removal from the township of Springfield, to Orange in the county of Essex. The latter appealed and the order was affirmed. This certiorari is brought by the Overseers of Orange to reverse those proceedings.

*Kingsley* and *W. Pennington,* for the plaintiffs in certiorari.

*John J. Chetwood,* for defendants.

VOL. II.—21

Orange *v.* Springfield.

HORNBLOWER, C. J.   The material facts of the case are as follow :

Elias L. Terril, who was the husband of Lucinda L. Terril, was bound as, an apprentice when -a boy about nine years of age, by the overseers of Orange and two justices of the peace, to Isaac Matthews, in the said township of Orange, to learn the trade of a shoemaker.   Terril was at that time a pauper chargeable to Orange.   There was a regular indenture, which was taken by the overseers of the poor and deposited in the town chest ; but it cannot now be found.   Terril lived with and served his master, Matthews, in the township of Orange, for the space of five or six years.   He then became dissatisfied, and Matthews testifies as follows : " The father of the said Elias called two or three times to get him *clear* of his *apprenticeship*.   The father (finally) brought with him one John Smith, who lived in Springfield, who agreed to be security to witness for forty dollars if witness would *give up* the balance of the time of the said apprentice.   Witness agreed to the proposition, and *gave up* the said apprentice, and received his pay.   Witness *sold* the time of the said apprentice as above stated."   The witness then proceeds' to say, that Smith was a shoemaker, " but nothing was said at the time about the apprentice continuing to learn that trade, *or with whom he was to work, or what he was to do*.   None of the overseers of Orange or the justices, were consulted, or knew anything of the apprentice being given up by witness.   Nothing was said about the indenture, nor was it ever assigned or given up."   Scovel Gardner, another witness, testifies that he was a brother-in-law of the apprentice; that Elias was to make up the forty dollars which Smith became security for ; that Elias *usually* worked at Smith's for a year or two after he left Matthews, either in the shop, or on the farm, and sometimes worked for the witness's father, who was also a shoemaker; that he never knew Smith to have any apprentice; he always understood Elias was working to pay Smith the amount he had become security for, but never heard or understood that he was an apprentice to Smith.   Other witnesses were examined, but their testimony is unimportant.

The counsel for the plaintiffs relied upon the cases of *King-*

*wood* v. *Bethlehem*, 1 *Green's Rep.* 221; *Rex.* v. *Inhabitants of
Langham*, *Caldecot's Rep.* 126, and some others referred to in
3 *Burn's Just.* 390 and onward. He insisted, that Elias L.
Terril, the husband of the pauper, after he ceased to reside
with Matthews in the township of Orange, lived one full year
with Smith, in Springfield, and served him as an apprentice,
under the indenture, and thereby gained a settlement. Whether
he did so or not, is the question, and it was the only point
raised on the argument of the cause. That a service may be
performed by an apprentice, by the consent of his master, with
another man, without a formal assignment in writing of the
indenture, so as to gain a settlement, was settled by this court
in the case of *Kingwood* v. *Bethlehem*, 1 *Green* 221; and the
same doctrine is no doubt fully established by the other author-
ities cited by the plaintiffs' counsel, and especially by the case
from *Caldecot's Rep.* 126. But after a careful examination of
the facts, or rather of the evidence furnished to the court, I am
of opinion, the plaintiffs have failed to bring themselves with-
in the principles of the authorities. In the cases cited, and in
every other, so far as I can discover, in which such second ser-
vice has been held to give a settlement, there has been an ex-
press or implied transfer or assignment of the indenture; or of
the first master's rights under it; or a *turn over* of the appren-
tice, a transfer or assignment of the residue of the time of ser-
vice, and of the right to the service of the apprentice, as such;
or some agreement or understanding between the parties, ex-
press or implied, that the apprentice was to continue such, and
as such, to serve the second master. Accordingly, we find in
the case of *Kingwood* v. *Bethlehem*, that the original master ac-
tually delivered over the indenture to Hull the second master;
and the court considered Hull, as controlling the boy, *as an ap-
prentice*, by authority of the indenture. Indeed the decision in
that case was bottomed on the fact, which the court considered
as sufficiently proved, " of a service *under* the indenture, with
Hull, in the township of Kingwood, for one full year." So in
the case of *St. Olave* v. *All Hallows*, 3 *Burn. Just.* 5, *Lond. Ed.*
390, it appeared that the apprentice served another man, by the
*consent* of the master and *for his* benefit. This last case is re-
ported in 1 *Str.* 554, and in giving judgment the court said,

" it was exactly the case that was in that court in *Mich. Geo.* 3, between the parish of Holy Trinity and Shoreditch; where Ferrer was bound to Truby, *with intent* to serve Green," (which he did) and his settlement was adjudged to be with Green. The case of *Holy Trinity* v. *Shoreditch*, is found in 1 *Str.* 10, and Parker, c. j. after stating the facts as above, says "it is the same thing as if Truby had *turned him over to* Green," and then adds, " the *turning over* an apprentice, is like the assigning any deed." Again in *Caister* v. *Eccles*, 1 *Ld. Raym.* 683, there was an actual assignment, and Holt, c. j., considered it as a good agreement between the first and second master, that the apprentice should serve the time with the second, and then adds, " and so it is a service, *as apprentice*, and so makes a good settlement;" thus distinctly putting it on the ground of a continued apprenticeship. So in *Alice Wheeler's case*, *King* v. *St. Geo. Hanover Square*, 3 *Burn. Just.* 390 pl. 14, the apprenticeship continued and her first master received her wages and found her clothes—This last case is reported in 2 *Str.* 1001, and in a note there, taken from *Burr. Set. C.* 16, a number of cases are collected and the following remarks added. " Some of these cases turn upon the *assignment* of the apprentice ; others upon his serving another master *by consent*, without assignment, and others upon his *discharge;* but *in all* of them, *it is considered,* what shall, *under the particular circumstances* of each case, amount to such *a service, under an indenture*, as will be sufficient to gain a settlement." The case cited by the plaintiffs' counsel of the *King* v. *Inhabitants of Langham, Caldecot's Rep.* 126, carries the doctrine as far, and comes as near perhaps to the facts of the case before the court, as any to be found. The apprentice in that case, as in this, was bound by the overseers of the poor. The master failed in business and sent the apprentice home to his father, who afterwards called on Stimson, the master; informed him he had found a new master for his son, and desired to have the indenture given up ; Stimson thereupon delivered it up to the father, having first made crosses upon it by way of cancellation. Bearcroft the new master, afterwards called on Stimson and asked him if he was willing to *resign up* the apprentice, and *to turn him over to him*, as he was going to take him *as an apprentice*, if Stimson

Orange *v.* Springfield.

was willing—Stimson agreed to do so, and promised not to reclaim him. Bearcroft took him as a *turn over.* It was argued in that case, that the indenture continued in force, and that *turning over* an apprentice was equivalent to an assignment; and it was so determined. Lord Mansfield and the other judges, put it on the ground, that there was an express *consent*, to the *particular service of the second* master—and Buller, justice, said, that the express *consent* by the master of an apprentice, *to the particular* subsequent service, was *a requisite not to be dispensed with;* and referred to the case of the *King* v. *Astrey*, 1 *Bur. Set. C.* 441, and the *King* v. *Ideford*, *ibid* 821, in which it had been so held. If however, the master continues to derive a benefit from the service of the apprentice, the *mere knowledge* in the master, of the person with whom the apprentice is living, is sufficient evidence of an assignment or consent. *(vid note a, to Rex.* v. *Langham, Caldecot's Rep.* 129) and in *Rex.* v. *Offerton, Burr. Set. C.* 802, Aston, just. said "I don't see the necessity of any *such privity* where, under a general leave, the master receives a profit."

The principles to be extracted from the cases I have mentioned, and from other decisions in England, appear to be these.

1. That the master of a parish apprentice, cannot by any agreement with the apprentice, vacate the indenture, so as to discharge himself from his obligations to the apprentice or to the parish—*Rex.* v. *Inhabitants of Langham, Caldecot* 126.

But 2, If the master discharges the apprentice without making any assignment of him, or without turning him over, but suffers him to go at large, without claiming or receiving any benefit from his services, the apprentice will acquire no settlement by living with another person in another parish. *St. Mary Kallender and St. Michael's, Burr. Set. C.* 274; 3 *Burn. Just.* 15 *Lond. ed.* 392; *St. Luke's &c.* v. *St. Leonard's, Burr. Sett. C.* 542; 1 *Bl. R.* 553; 3 *Burns Just.* 396; *Notton and Roystone, ibid* 397, *Burr. Set. C.* 619; *Overseers of Trenton,* v. *Overseers of Nottingham,* 1 *Coxe,* 289.

3. That a service for the term required by the statute, with a second master, will give a settlement, if such service was *under* the indenture.—This is proved by all the cases.

4. But in order to constitute a service, *under* the inden-

ture, there must be an assignment express, or implied—and

5. If the first master continues to claim an interest in the apprentice, or derives a benefit from his services, an assignment may be *implied*, from the mere fact, that the master knows where and with whom the apprentice is living—and such knowledge may be proved, or inferred from circumstances.—1 *Green's Rep.* 228—9.

But 6. If all relation between the first master and apprentice, (so far at least, as the same can be dissolved by the master) has ceased; then, in order to raise an implied assignment, and constitute a service, *under* the indenture, there must be an actual *turn-over* of the apprentice, or an explicit consent or agreement by the master, to the particular subsequent service. *Rex.* v. *Inhabitants of Langham, Caldecot* 126, and other cases already referred to.

If now, we apply these rules to the case before us, the plaintiffs must fail. The object of the apprentice and his father, was, " *to get clear of his apprenticeship.*" The proposition made by Smith, was, *not to pay*, but to be *security* for the payment of $40, if Matthews " would give up the balance of his time ; " and Matthews agreed to it, and sold his time, not to Smith, but to the person for whom Smith was security. Here then, so far as could be done, by the master and the apprentice, was a dissolution of the relation that subsisted between them. It is true, this transaction so far as concerned the town, and it may be, the apprentice too, was an illegal one. The indenture was still in force; and therefore, if the master had made a *turn-over* of the apprentice to Smith, or had understood and agreed, as part of the bargain, that he should serve Smith as an apprentice, the law would have considered the service with him as under the indenture, and so giving a settlement in Springfield.

7. But instead of such a transfer or agreement, Matthews expressly testifies that " nothing was said about the apprentice continuing to learn the trade, *or with whom he was to work*, or what he was to do." He discharged him, and made no provision for his future service.

These constructive assignments of apprentices have been carried to great lengths in England, further, even upon their own statutes, than I should feel willing to go. But in view of

the language of our statute, if it was not *res judicata*, in this court, I should doubt the propriety of adopting the principles laid down in the books on this subject.

The statute of 13 and 14 *Car.* 2, *c.* 12, in connection with 1 *Jac.* 2 *c.* 17, and 3 *W.* form the basis, on which this class of settlement cases have been decided in England. But our statute (*Rev. L.* 35, *sec.* 1) uses very different language. By the former, it is enacted, that if any person shall be bound an apprentice by indenture, and inhabit in any town or parish (40 days) such binding and inhabitation shall be adjudged a good settlement. But our statute fixes the settlement, " where such apprenticeship or service was last performed " (for the space of one full year) " either with his or her first master or mistress, or with the assignee or assignees, *on an assignment of the said indentures.*" These last words, would I think have justified this court, in requiring an actual, and perhaps a written assignment, by and with the concurrence of all the parties to the indenture. Such a course would have saved much litigation, and prevented much injustice, that is now done to apprentices. But even upon the English authorities, I am of opinion, the order of the sessions ought to be affirmed.

FORD, J. By the provisions of our statute, an apprentice is allowed to gain a settlement in the township where he last served for one full year, *under indenture.* If there be a service during that specified term, but *not* under indenture, it confers no settlement. The pauper, Lucinda Terril, and her four children, have a derivate settlement from Elias L. Terril, her late deceased husband, who was bound out by the Overseers of Orange to one Isaac Matthews, and served five years under the said indenture, in the same township. This service fixed his settlement there up to that time ; and there is not any dispute, so far, arising in the case. But it is alleged, that he afterward *served* in Springfield one year under this same indenture. It is admitted that he *resided* a year in Springfield ; but that he *served under indenture* that year, or any time after leaving Orange, is denied. It depends on the testimony given by Isaac Matthews, his master, with whom he served in Orange, the first five or six years. He testifies, that an application was then made to him, by the father of the boy, " to get him *clear of his said apprenticeship* ; "

Orange *v.* Springfield.

evidently conveying the idea, that Elias was not to be any longer an apprentice. The master consented to the proposal of giving him *free*, for the sum of forty dollars. No assignment, either written or parol, to any other person, was made, or so much as proposed. A person by the name of John Smith, who resided in Springfield, agreed to be *security* for the forty dollars, on condition that witness would "*give up the balance of the time of the apprentice*," and witness agreed to the proposition; and nothing was said about his continuing at the trade, or whom he was to serve, or what he was to do. Instead of any assignment, either of the apprentice, or of his time, or of his indenture, this evidence proves, that his relation as apprentice to any known person then ceased. No one could show a right to command his services by indenture, or to keep him under control. The master gave him clear from the indenture, by a solemn contract, founded on valuable consideration, without appointing a place for him to work, or person to serve. He ceased to be an apprentice by indenture to any known person; and though he lived a year in Springfield with Smith the *security*, the case shows abundantly, it was not as an apprentice, nor under the indenture; therefore he gained no settlement in Springfield by living a year with Smith.* Isaac Matthews still remained liable to the township of Orange, which was neither party nor privy to what was done by Matthews; but the apprentice himself served no body *under indenture* after he left Matthews, and therefore he gained no settlement in Springfield. The order of Sessions must consequently be affirmed.

RYERSON J. It is conceded by both the parties in this cause, that the settlement in question is derivative, dependent on that of Elias L. Terril, dec. the husband of one and the father of the other paupers named in the order of removal. It is further established that his settlement was in Orange, and as one of the poor of that township, he was duly bound, and served there more than a year under an indenture of apprenticeship, made and approved of by the overseers and two justices of the peace. But on the part of Orange it is insisted that he subsequently ac-

---

* There is no case in all the books respecting the assignment of an indenture, or appointing an apprentice to serve with any other person, or turning him over to another, so weak and deficient as this, in which he was allowed to gain a settlement by service under them. FORD J.

Orange *v.* Springfield.

quired a settlement under this same indenture, by service in Springfield. There is no doubt that he lived more than one year in Springfield before the expiration of the time limited in the indenture, with one Smith ; which it is said was a service under the indenture, within the meaning of our act of Assembly. The only witness who pretended to have any personal knowledge of the manner and terms of his removal from the family of Matthews, to whom he was bound, was Matthews himself, who said, " The father of Elias called two or three times to get said Elias clear of his said apprenticeship, the said Elias being dissatisfied. The father of said Elias brought with him one John Smith, who agreed to be security to witness for forty dollars, if witness would give up the balance of the time of said apprentice—witness agreed to the proposition, gave up the said apprentice and received his pay. Witness sold the time of the said apprentice as above stated. The said Smith was a shoemaker, but nothing was said at the time about the apprentice continuing to learn that trade, or with whom he was to work, or what he was to do." This was not a transfer of the apprentice, but setting him at large ; not appointing him to serve, or consenting to his service, with any person in particular, as required by the strongest cases in support of the claims of Orange, but a general license to go and labor where he pleased, and alone for the benefit of the apprentice. That he did in fact subsequently labor for Smith or serve him, more than a year in Springfield, even at his former trade, is of no moment; since he was not controlled by the first master, or by any person deriving authority (rightfully or otherwise) from him. It could not be a service under the indenture. It was supposed on the argument, by one of the counsel, that this case ought to be ruled by the case of *Rex* v. *Langham*, 3 *Burns*, 420 ; *Caldecot* 126. But it will be observed, that case has no binding authority on this court ; and it differs from the case before the court, in that the indenture, with the apprentice, was delivered over to a new master, whom the apprentice had express permission to serve at his old business. But here appears to have been no stipulation or understanding with whom he was to labor, or in what pursuit. And in a subsequent case, 3 *Term Rep.* 605, Lord Kenyon in the Kings Bench approves of what had

Orange *v.* Springfield.

before been held, that a general license to serve whom the apprentice would, without a license to serve any person in particular, did not make the particular service, a service under the indenture, although it continued in force.  3 *Burns* 417 ; *W. Black.* 553 ; *Rex* v. *St. Lukes.*  A contrary rule would defeat the object of the act, part of which is to secure a proper superintendence of the youth, and to watch the inexperience of the apprentice.  And to the want of this we may now perhaps look for the cause of the present burden on the public.  To prevent misapprehension, I would remark, that I have no thought that the transaction disclosed in this case, extinguished or impaired the contract of Matthews, the master, with the overseers.

Nor does this opinion, in my view, conflict with the decision of this court, in the case of *Kingwood* v. *Bethlehem*, 1 *Green* 221.  Though if at liberty to do so, and the case required it, I might perhaps for the reason suggested by the Chief Justice, depart from the principle of that case.

In my opinion, both orders must be affirmed.

Order affirmed.